IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 1:14-CR-145-02-WSD |
| WILLIE DEWAYNE LYNCH | : | |

## SENTENCING MEMORANDUM

COMES NOW, Jeffrey Brickman, counsel for Defendant, Willie Dewayne Lynch, and files this sentencing memorandum for the Court's consideration. As discussed more fully below, Mr. Lynch requests a downward variance from the guideline range in the instant case based upon the factors set forth in Title 18, United States Code, § 3553(a). A careful consideration and application of these factors would not only enable this Court to fashion a just and individualized sentence, but also avoid the imposition of a Guidelines sentence, which is substantially greater than necessary to address the general purposes of sentencing.

I.      APPLICATION OF TITLE 18, U.S.C. § 3553(a) FACTORS

The Court, following United States v. Booker and its progeny, must give due consideration to the factors set forth in 18 U.S.C. § 3553(a). More specifically, the sentence to be imposed should be "sufficient, but not greater than necessary" to comply with the purposes of sentencing. See 18 U.S.C. § 3553(a)(2)(A)-(D).   In

the interests of brevity, counsel will briefly address the respective factors and apply them to the facts of the instant case.

## Nature and Circumstances of the Offense

There is no dispute that Mr. Lynch is guilty of defrauding The Home Depot in a "ticket switching scheme." This scheme was perpetrated at multiple locations for an extended period of time and in multiple states. As a result of his unlawful conduct, Mr. Lynch fully appreciates the fact that he will and should be punished for his actions. While there is no dispute that Mr. Lynch "learned the trade" from his cousin, Robert Hatcher, Mr. Lynch refuses to use that fact as an excuse or defense to his unlawful conduct.

Through his guilty plea and his candid debriefings with the investigative agents, Mr. Lynch has readily admitted to his illicit conduct. He completely understands that upon release from prison, he will be required to pay restitution to The Home Depot, and that a portion of every pay check he receives for his own hard work will go directly to the victim he defrauded.

## History and Characteristics of the Defendant

Willie Dewayne Lynch is 29 years of age. His childhood was anything but idyllic. His father, who drank heavily on the weekend, was physically abusive toward Mr. Lynch's mother. Mr. Lynch vividly remembers an occasion on which his mother used him (Mr. Lynch) as a shield when his

father attacked his mother with an ax.  His parents divorced when he was 5 years of age, and his father died the following year of a heart attack.  When his father passed away, Mr. Lynch was raised primarily by his mother, who developed a horrible drinking problem, and whose boyfriend was a drug user. His relatives were certainly no "escape valve" for Mr. Lynch, who recalls being the victim of physical and verbal abuse at the hands of his uncle.

With one parent dead, and the other parent an alcoholic, Mr. Lynch had no where to turn and no one to turn to - his twin sisters had died from complications of sickle cell before he was born and his two brothers were awful role models.  Each was continuously in and out of prison, ultimately leaving "home" to serve their respective life sentences in Georgia's prison system.

Mr. Lynch's upbringing was further complicated in the 4th grade, when he was the victim of a horribly tragic jump rope accident, which resulted in his losing vision in his right eye.  As fate would have it, Mr. Lynch's mother waited two weeks before taking him to the eye doctor.  Unfortunately, he lost complete vision in his right eye.  What followed was an endless barrage of teasing and insults from his fellow students and neighbors.   Mr. Lynch distinctly remembers being called "Fly" and "Dead Eye Dan."  The verbal abuse was relentless, weighed heavily on Mr. Lynch and was yet another

obstacle in his formative years.  Defense counsel has spoken with Mr. Lynch on many occasions about his upbringing.   More often than not, Mr. Lynch shrugs his shoulders and says, "there was just a lot of drama going on in my life."  Yet, Mr. Lynch has never "blamed" his actions in the instant case on his sad upbringing. Instead, he simply expresses hope that his children never have to experience the life he endured as a child.

On the day of sentencing, defense counsel will further discuss Mr. Lynch's depressing and lonely upbringing.  Mr. Lynch simply asks this Court to carefully consider this dark time in his life, and to give it due consideration in fashioning the appropriate sentence.

Mr. Lynch's Criminal History - A Closer Look Is Warranted

As the Court well knows, Mr. Lynch is not a "first offender," and certainly doesn't ask to be treated as such.  In fact, he has two misdemeanor convictions, one for Criminal Trespass and one for Theft by Shoplifting.  He does not deny committing the crimes, and candidly admits that at the time, he did not take probation seriously which resulted in his getting his probation revoked.

However, Mr. Lynch does ask the Court to take a closer look at the conviction for Criminal Trespass, which was the result of his having returned to an apartment complex where he used to live with his girlfriend, Ms.

Latosha Rutlidge.  After being ordered to move out of the complex and not return, Mr. Lynch moved to Alabama.  However, what is not contained in the Pre-Sentence Report is _why_ Mr. Lynch returned.  In short, Mr. Lynch returned to the apartment complex after receiving a call from Ms. Rutlidge (who was then pregnant with their now 6 year old daughter, Tacarra Lynch).    Ms. Rutlidge advised Mr. Lynch that she was experiencing morning sickness and asked him to come over.   Knowing that he was not allowed to return to the complex, Mr. Lynch parked his car a short distance from the apartment. Shortly after entering the apartment, Mr. Lynch was told by Ms. Rutlidge that she saw police outside of the apartment and told him to hide in the attic. After the police entered the apartment and asked if Mr. Lynch was present, Ms. Rutlidge lied and told them that he was not.    Police asked for and received consent to search the apartment.   Right before leaving, the police decided to check the attic after hearing what they believed to be a "sneeze." Mr. Lynch, who was up in the attic, was arrested, as was Ms. Rutlidge who was charged with Obstruction of a Police Officer.  Both entered guilty pleas without assistance of counsel and received a twelve month probated sentence. Mr. Lynch does not dispute that this conviction results in his being assessed one criminal history point.

<u>Mr. Lynch's Cooperation</u>

Within five weeks of his arrest, Mr. Lynch had been debriefed on two separate occasions.  During these debriefings, Mr. Lynch not only described his involvement in this case, but the involvement of his co-defendants.  The debriefings were extensive, detailed and forthcoming.  Mr. Lynch was also the first of his co-defendants to provide details about the "fake ID" segment of the case.  He expressed a willingness to testify against his co-defendants, and helped the Government corroborate various facts in their case.

On sentencing day, counsel will go into additional details concerning the breadth of Mr. Lynch's cooperation.

## **General Sentencing Goals**

The Court is to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence and to protect the public from further crimes of the defendant.

Here, the recommended Guideline sentence is simply not necessary to promote respect for the law, nor is it necessary for Mr. Lynch to be justly punished. Make no mistake – Mr. Lynch is fully aware that he should and will be punished for his actions.  And, he is not asking the Court for a "time served" sentence.  He fully expects that he will be ordered to serve additional time in prison given the

facts and circumstances surrounding the offense conduct.   The question is not whether he should be punished, but how much should he be punished?   For the past six months, Mr. Lynch has been "removed" from society.   He did not ask to be released on bond, fully understanding that he needed to be punished for his actions. Being in custody, Mr. Lynch has certainly had ample time to reflect on the poor decisions he has made, and the direct and collateral effects this conviction will have on his future.   The longer he remains in prison, the longer it will take for him to resume his education, his employment opportunities, to begin paying restitution, and to receive the drug and alcohol treatment that he desires.

Finally, an unreasonably lengthy sentence of incarceration also will not accomplish the goals of general or specific deterrence nor protect the public from future crimes of the defendant.   Again, a stiff sentence of incarceration below that recommended by the Guidelines will more than sufficiently address the goals of deterrence.

Mr. Lynch and I are well aware of and are genuinely appreciative of the concessions that the Government has made in our good faith plea discussions.   On sentencing day, we will certainly address how those concessions should factor into the Court's "sentencing strategy."   Recognizing that the Court must address the dangers of disparity in sentencing, we will also be prepared to explain why Mr. Lynch's s case should be looked at differently than that of his co-defendants.

Counsel hopes that this memorandum has provided the Court with a roadmap of what issues defense counsel will raise on October 21, 2014, and to give the Court another perspective on Mr. Lynch - a man who had an incredibly depressing upbringing, who before this, had no felony convictions, who when arrested for the instant offense, made it very clear that he was more than willing to fall on the sword, fully cooperate and make no excuses for his actions.

## CONCLUSION

By granting a downward variance in this case, the Court can still arrive at a sentence that addresses each of the above-described factors.  Given the nature of Mr. Lynch's non-violent record, he should not be considered a "danger to the community."   A downward variance would still permit the Court to fashion a sentence that more than adequately punishes Mr. Lynch for his actions.  The fact is that any period of incarceration will more than punish Mr. Lynch for his actions, and certainly afford adequate deterrence to criminal conduct.  Finally, a downward variance would also afford Mr. Lynch the opportunity to immediately receive much needed drug and alcohol treatment, an opportunity to re-enroll in school, and to prove to this Court that he can be a productive member of society.  Mr. Lynch owes The Home Depot a substantial amount of money, and very much wants to prove to this Court and the Government that he can honor the terms and conditions of his sentence.   Considering all the facts and circumstances of this case, I respectfully

request that the Court place its faith in Mr. Lynch and fashion a just and appropriate sentence.

Respectfully submitted, this 14th day of October, 2014.

/Jeffrey H. Brickman/
Jeffrey H. Brickman
Georgia Bar No. 080432
Jeffrey H. Brickman, LLC
511 East Paces Ferry Road, N.E.
Atlanta, Georgia 30305
678/420-9382 (Direct)
404/879-9704 (Fax)
Jeff@jeffbrickmanlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | NO. 1:14-CR-145-02-WSD |
| WILLIE DEWAYNE LYNCH | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October, 2014, I electronically filed the  aforementioned Sentencing Memorandum with the Clerk of Court and served a copy of same to the following attorney of record:

Ms. Teresa Hoyt
teresa.hoyt@usdoj.gov

Mr. Jeffrey Davis
Jeffrey.Davis2@usdoj.gov

/Jeffrey H. Brickman/
Counsel for Defendant